UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MATTHEW TIGER,

      Plaintiff,

v.                                    Case No:   6:15-cv-1701-Orl-41TBS

DYNAMIC SPORTS NUTRITION, LLC
and PBB TRADEMARK HOLDINGS,
LLC,

      Defendants.
_____

## ORDER

This case comes before the Court on Plaintiff's Motion to Compel Better Responses to Plaintiff's *Second* Set of Interrogatories and *First*, *Second* and *Third* Requests for Production of Documents to Defendants (Doc. 37).   Defendants oppose the motion (Doc. 43).

Plaintiff Matthew Tiger brings this lawsuit on behalf of himself and a putative class of similarly situated persons who purchased dietary supplements manufactured by Defendants Dynamic Sports Nutrition, LLC ("DSN") and PBB Trademark Holdings, LLC ("PBB") (Doc. 1 at 1).   Plaintiff alleges that Defendants use false and misleading marketing and packaging to deceive customers into believing their products contain steroids (Id. at 20-59).   Count I of the complaint is an action for violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), FLA. STAT. § 501.201 *et seq.* (Id.). Count II is an action for unjust enrichment (Id.).   DSN has answered the complaint (Doc. 9), and PBB has filed a motion to dismiss for lack of jurisdiction and improper venue (Doc. 10).

Both Defendants allege that Plaintiff is the vice president of marketing for Infinite Labs LLC, a direct competitor of DSN (Doc. 24 at 1-4; Doc. 24-1; Doc. 24-2; Doc. 43 at 3). PBB is currently prosecuting a claim against Infinite Labs before the United States Trademark Trial and Appeal Board, seeking cancellation of the trademark for Infinite Labs' product "Cyclo Tren," which competes with DSN's product "Tren 75."   (Id. at 3-4). Tren 75 is one of the products Plaintiff says he purchased in response to DSN's advertising (Doc. 1, ¶ 9).   Plaintiff denies that DSN and Infinite Labs are direct competitors and says this claim is no more accurate than comparing Walgreens to a street level drug dealer (Doc. 37 at 5).

Plaintiff has propounded interrogatories and requests for production to Defendants (Doc. 37 at 1).   They have objected to certain discovery concerning (1) the manufacture, production, and distribution of their products, (2) the advertising of their products, (3) the identity of their customers, and (4) the relationship between DSN and PBB (Id.). Plaintiff's motion seeks an order overruling the objections and compelling Defendants to provide the information (Id.).   "The proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant."   Bright v. Frix, No. 8:12-cv-1163-T-35MAP, 2016 WL 1011441, at * 1 (M.D. Fla. Jan. 22, 2016).

The scope of discovery is well known:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.   Information within this scope of discovery need not be admissible in evidence to be discoverable.

F<small>ED</small>. R. C<small>IV</small>. P. 26(b)(1).   "The overall purpose of discovery under the Federal Rules is to require the disclosure of all relevant information so that the ultimate resolution of disputed issues in any civil action may be based on a full and accurate understanding of the true facts, and therefore embody a fair and just result."   <u>Oliver v. City of Orlando</u>, No. 6:06-cv-1671-Orl-31DAB, 2007 WL 3232227, * 2 (M.D. Fla. Oct. 31, 2007) (citing <u>United States v. Proctor & Gamble Co.</u>, 356 U.S. 677, 682 (1958)).   "Relevancy is determined based on the 'tendency to make a fact more or less probable than it would be without the evidence, and the fact is of consequence in determining the action.'   F<small>ED</small>. R. E<small>VID</small>. 401."   <u>Hankinson v. R.T.G. Furniture Corp.</u>, No. 15-81139-civ-Cohn/Seltzer, 2016 WL 1182768, at *1 (S.D. Fla. Mar. 28, 2016) (quoting <u>Garcia v. Padilla</u>, No. 2:15-cv-735-FtM-29CM, 2016 WL 881143, at * 2 (M.D. Fla. Mar. 8, 2016)).

Proportionality requires counsel and the court to consider whether relevant information is discoverable in view of the needs of the case.   In making this determination, the court is guided by the non-exclusive list of factors in Rule 26(b)(1).   <u>Graham & Co., LLC v. Liberty Mut. Fire Ins. Co.</u>, No. 2:14-cv-2148-JHH, 2016 WL 1319697, at *3 (N.D. Ala. April 5, 2016).   "Any application of the proportionality factors must start with the actual claims and defenses in the case, and a consideration of how and to what degree the requested discovery bears on those claims and defenses."   <u>Id.</u> (quoting <u>Witt v. GC Servs. Ltd. P'ship</u>, 307 F.R.D. 554, 569 (D. Colo. 2014)).

The elements of Plaintiff's FDUTPA claim are: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages."   <u>Rollins, Inc. v. Butland</u>, 951 So. 2d 860, 869 (Fla. 2d DCA 2006).   The elements of his unjust enrichment claim are: "(1) plaintiff has conferred a benefit on the defendant, who has  knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances

are such that it would be inequitable for the defendant to retain the benefit without paying

the value thereof to the plaintiff." Hillman Const. Corp. v.  Wainer, 636 So. 2d 576, 577

(Fla. 4th DCA 1994) (citing Henry M. Butler Inc. v. Trizec Props. Inc., 524 So. 2d 710 (Fla.

2d DCA 1988)).

     Some of Plaintiff's discovery requests ask for information for the period January

2010 to the present.   The statutes of limitation on both of Plaintiff's claims are four years.

FLA. STAT. §§ 95.11(3)(f) and (3)(p); Marlborough Holdings Grp., Ltd v. Azimut-Benetti, 505

F. App'x 899, 906 (11th Cir. 2013).   This lawsuit was filed on October 7, 2015 (Doc. 1).

Defendants have refused to provide information that came into existence before October

7, 2011 on the ground that anything that occurred before that date is time barred.   Plaintiff

argues this not appropriate because advertising prior to October 7, 2011 may have

induced people to buy Defendants' products after that date (Doc. 37 at 8).   What Plaintiff

says is true, but does not explain his decision to use the January 2010 date.   Similarly,

assuming that claims arising before October 7, 2011 are barred, that does not lead to the

conclusion that information created before that date is not discoverable.   Neither side has

articulated a logical reason for the date it has chosen which is why this Order does not

dispose of this issue.

     Plaintiff seeks the following discovery concerning Defendants' manufacturing,

production, and distribution:

> Interrogatory No. 12: Since January 2010, identify the names,
> addresses, and telephone numbers of all individuals and/or
> entities that entered into any and all agreements with you as
> your manufacturer, producer, and/or distributor of Defendants'
> Products (defined above as: "Tren 75," "Winn50," "Test 600x,"
> "Clen," "Var," "Decca 200").
>
> Interrogatory No. 13: State the name(s), address(s), and/or
> FDA (Food and Drug Administration) Food Facility

Registration Number(s) of the manufacturing facility(s) where Defendants' Products were mixed, made, or manufactured, and if different, the facility where it was placed into containers or capsules.

Request for Production No. 2 in Plaintiff's Third Request for Production: All documents relating to any agreement(s) between Defendants and any manufacturer or supplier of the Defendants' Products (defined above as: "Tren 75," "Winn50," "Test 600x," "Clen," "Var," "Decca 200"), including all agreements, written communications, and documents referencing oral communications related thereto.

Request for Production No. 3 in Plaintiff's Third Request for Production: All contracts and/or agreements that Defendants entered into with (or as) a manufacturer of nutrition ingredients and/or products regarding or relating to Defendants' Products.

Request for Production No. 7 in Plaintiff's Third Request for Production: If Defendant was not an FDA "registered food facility," all documents that identify the name and FDA Registration Number of each facility where Defendant, manufactured or caused the manufacture of Defendants' Products.

Plaintiff argues that this information is relevant and discoverable because in response to other discovery, Defendants state that they have not conducted any tests or performed any analyses to determine whether their products conform to the specifications on the labels (Doc. 37 at 5). Plaintiff asserts that United States Food and Drug Administration regulations require quantitative and qualitative analysis of the ingredients of all dietary supplements and, since Defendants don't have the information, Plaintiff will have to get it from the manufacturer. Defendants counter that nothing about the manufacture and distribution of their products is relevant to Plaintiff's claims (Doc. 43 at 6-7). They argue that this information is confidential, proprietary, and that when the shoe was on the other foot, Plaintiff refused to divulge the names of the companies that manufacture products for Infinite Labs because the information is considered to be

confidential and proprietary (Id. at 8).   Lastly, Defendants argue that the true purpose of

this discovery is so that Plaintiff can harass their manufacturers and suppliers (Id.).

     The composition of Defendants' products is relevant to Plaintiff's claims.   Since

Defendants have not tested their own products, that information will have to come from

another source with the manufacturers being a logical choice.   But the objected to

discovery goes well beyond the ingredients and quantities of each in Defendants'

products.   In their objections, Defendants did not say the information is confidential but

they did assert that it is proprietary.   The Court fails to understand why the

manufacturer's name and contact information, as opposed to the formulas, is confidential

and proprietary.   Now, Defendants objections are **OVERRULED**, and the motion to

compel is **GRANTED** to the extent that Defendants shall provide the names, addresses,

and telephone numbers of the persons or entities that have manufactured, at any time,

Tren 75, Winn50, Test 600x, Clen, Var, or Decca 200 that was sold or delivered by

Defendants to any third party on or after October 7, 2011.   In all other respects,

Defendants' objections to this discovery are **SUSTAINED**, and the motion to compel is

**DENIED** because the information is not relevant to the controversy.

     Plaintiff's first request for production asks for the following information concerning

Defendants' advertising:

> Request for Production No. 1: Each advertisement
> disseminated or published by or on behalf of Defendants for
> any of its Products, (and whether or not in combination with
> any other of Defendants products which are not a subject of this
> suit, defined above and hereinafter, as "Tren 75," "Winn50,"
> "Test 600x," "Clen," "Var," "Decca 200").   For advertisements
> appearing on or in the Internet, including banner
> advertisements and web pages, or mobile networks and
> applications, also provide documents showing metatags, any
> HTML tags or other code, together with the uniform resource

locator (URL) or other Internet location where the
advertisement appeared.

Originally, Defendants objected that this information is not relevant, the request is

not properly limited in scope, is overly broad, unduly burdensome, and not proportional to

the needs of the case (Doc. 37 at 7).   In a supplemental response they stated that DSN

has produced some responsive documents and that PBB has none (Id.).   Defendants

also asserted that all of the requested information is publically available on the internet

and can be obtained by right clicking on any advertisement for DSN's products (Id. at 8).

Because the information is publically available, Defendants argue that Plaintiff can and

should obtain the information at its own expense (Id.).

Plaintiff argues that Defendants' objections are simply boilerplate and that a former

DSN employee has made the following statements concerning Brian Clapp, president of

DSN:

> [Mr. Clapp] banned all conversation related to the products on
> his forums, and inserted a clause with third-party advertising
> forums that their members not be allowed to talk about the
> supplements either.
>
> Mr. Clapp failed to list the ingredients on any of his websites,
> and even went so far as to have the site auto-censor the
> names of the RoidStore.com/BuySteroids.com URLs and
> product names.
>
> At the time I worked there, every positive review posted on
> BuySteroids.com/RoidStore.com was fake, and came not from
> a legitimate customer, but from an employee writing them at
> his direction.

(Id. at 8-9).   If true, these statements are of no value to the Court in deciding whether

Defendants should be required to produce their advertising.   Plaintiff alleges that

Defendants' advertising is untruthful and therefore, the advertising is relevant and

discoverable.   The only issues are the time frame, which the Court does not decide

today, and whether Defendants should produce the information or Plaintiff should get it himself.   The Court will **OVERRULE** Defendant's objections and **GRANT** the motion to compel this information.   It does not appear from Defendant's supplemental response that there will be any great burden to them in producing the information and they are in a better position than Plaintiff to know when the production is complete.

Request 22 in Plaintiff's first request for production seeks "[d]ocuments sufficient to show the names and address of all customers who have purchased the Defendants' products from January 1, 2010 to present."   (Doc. 37 at 9).   Defendants have produced the list for the period beginning October 7, 2011, with the customers names and addresses redacted (Id. at 10).   They object to this request on the ground that their customer list is confidential, proprietary, and protected by the trade secret privilege (Id. at 9).   They also object that their customers have a privacy interest in keeping their names and addresses confidential (Id.).   Defendants contend that this information is not relevant unless the Court certifies the class (Id.).   And, they object that the only customer information that could be relevant concerns Tren 75, Winn-50, Test-600x, Clen, Var 10, and Deca 200 which are the only products identified in the complaint (Id.).

Plaintiff argues that the information is relevant and that "Defendants have made an active effort to suppress, hide, and purge any negative comments about their Products from potential purchasers of their Products, and they do not want Plaintiff to confirm the same."   (Id.).   Plaintiff also argues that this information is relevant to show that Defendants package and market their products in a manner intended to deceive customers into believing they are purchasing steroids (Id. at 8).   The Court agrees with Defendants that request 22 is a premature attempt to obtain information that is not relevant unless the Court grants class certification.   Before the Court will certify a class,

Plaintiff will have to establish, *inter alia*, the numerosity and ascertainability of the class. But that can be done without the customer names and contact information. The Court also bases its decision on its concern that Plaintiff is currently advertising for additional plaintiffs to join this case, which leads the Court to suspect that Plaintiff wants this information to solicit other people to join the suit as potential class representatives (Doc. 43 at 15). Accordingly, Defendants' objection is **SUSTAINED**, and the motion to compel is **DENIED**. Hankinson, 2016 WL 1182768, at *2 ("Discovery of class members' identities prior to class certification is not favored where plaintiffs' attorneys may be seeking the information to solicit new clients, rather than to establish the propriety of certification."); Levine v. Gunther Motor Co. of Plantation, Inc., No. 10-61812-CIV, 2010 WL 5140590, at *2-3 (S.D. Fla. Dec. 9, 2010). This decision leaves for another day, the issue whether Defendants' customer list is confidential and proprietary.

Defendants have objected to producing information responsive to the following requests in Plaintiff's second request for production:

> Request for Production No. 1. Please produce for each Defendant entity (Dynamic Sports Nutrition, LLC and PBB Trademark Holdings, LLC), all documents which indicate, show or tend to indicate or show the following, including, but not limited to, all filings with state and federal agencies:
>
> > e. All documents evidencing loans from one entity to the other.
> >
> > f. All documents evidencing loans, or guaranteeing loans from or between any owner, member, or managing member, and either of the Defendant entities.
>
> Request for Production No. 4: Produce all monthly statements and cancelled checks that show payments made to Dynamic Sports Nutrition, LLC by PBB Trademark Holdings, LLC.
>
> Request for Production No. 5. Produce all monthly statements and cancelled checks that show payments made to PBB Trademark Holdings, LLC by Dynamic Sports Nutrition, LLC.

Defendants object that this information is not relevant or proportional to the needs of the case, is overly broad, and burdensome (Doc. 37 at 11-12).   Plaintiff argues that these are boilerplate objections and that the information is relevant because Defendants have made conflicting statements about their corporate relationship (Id. at 12-13).   It also appears that Plaintiff is desirous of this information in hopes of discovering facts that will support an action to pierce Defendants' corporate veils (Id. at 13-14).

The Court agrees with Plaintiff that Defendants' objections are for the most part, boilerplate.   Still, it is not persuaded that the information sought is relevant to Plaintiff's FDUTPA and unjust enrichment claims.   Accordingly, the objections are **SUSTAINED**, and the motion to compel this discovery is **DENIED**.

When a court decides a motion to compel the prevailing party is entitled to its costs, including reasonable attorney's fees, unless (i) the requesting party failed to make a good faith attempt to obtain the discovery without a court order; (ii) the responding party's position was substantially justified; or (iii) other circumstances make an award of expenses unjust.   FED. R. CIV. P. 37(a)(5)(A), (B).   If a motion is granted in part and denied in part, the court may make a reasonable apportionment of expenses for the motion.   FED. R. CIV. P. 37(a)(5)(C).   The Court finds that none of the exceptions apply, and that Defendants are the prevailing parties on the motion to compel.   They have 14 days to file their application for fees and costs and then Plaintiff shall have 14 days to respond.   The parties may avoid this procedure by agreeing on the amount of fees and costs to be awarded to Defendants.

**DONE** and **ORDERED** in Orlando, Florida on April 11, 2016.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to Counsel of Record