UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MATTHEW TIGER,

      Plaintiff,

v.                                  Case No:   6:15-cv-1701-Orl-41TBS

DYNAMIC SPORTS NUTRITION, LLC
and PBB TRADEMARK HOLDINGS,
LLC,

      Defendants.

_____

## ORDER

This case comes before the Court on Defendant Dynamic Sports Nutrition, LLC's ("DSN") Motion for Order Directing Release of Cable Subscriber Information (Doc. 60). Plaintiff Matthew Tiger opposes the motion (Doc. 65).   The motion is due to be **GRANTED in part** and **DENIED in part**.

Plaintiff brings this lawsuit on behalf of himself and two putative classes[1] of similarly situated persons who purchased dietary supplements manufactured by Defendants DSN and PBB Trademark Holdings, LLC ("PBB")[2] (Doc. 1 at 1).   He alleges that Defendants use false and misleading marketing and packaging to deceive customers into believing their products are steroids (Id. at 20-59).   Count I of the complaint is an action for violation of the Florida Deceptive and Unfair Trade Practices Act, FLA. STAT. § 501.201 *et seq.* (Id.).   Count II is an action for unjust enrichment (Id.).

---

[1] Plaintiff seeks to certify two classes.   The first is comprised of "[a]ll individuals in the United States who, within the applicable statute of limitations preceding the filing of this action, purchased the Defendants' Products (the 'National Class')."   (Doc. 1, ¶ 60(a)).   The second class consists of "[a]ll individuals in the State of Florida who, within the applicable statute of limitations preceding the filing of this action, purchased the Defendants' Products (the 'Florida Subclass')."   (Id., ¶ 60(b)).

[2] PBB has filed a motion to dismiss for lack of jurisdiction and improper venue (Doc. 10).

Defendants allege that Plaintiff is the vice president of marketing for Infinite Labs LLC, which competes directly with DSN (Doc. 24 at 1-4; Doc. 24-1; Doc. 24-2; Doc. 43 at 3).   PBB is currently prosecuting a claim against Infinite Labs before the United States Trademark Trial and Appeal Board, seeking cancellation of the trademark for Infinite Labs' product "Cyclo Tren," which competes with DSN's product "Tren 75."[3] (Id. at 3-4). Tren 75 is one of the products Plaintiff alleges that he purchased in response to DSN's advertising (Doc. 1, ¶ 9).

DSN contends that Plaintiff and his attorneys are not suitable to represent the proposed classes because the attorneys "manufactured Plaintiff's standing to sue;" Plaintiff and his attorneys have conflicting fiduciary duties to Infinite Labs and the putative classes; and this lawsuit was brought for the improper purpose of harassing Defendants (Doc. 60 at 3).   DSN asserts that Plaintiff is using this case as a vehicle to harass Defendants on behalf of Infinite Labs and to conduct overly broad discovery to obtain Defendants' confidential and proprietary information for competitive gain and to assist Infinite Labs in its case before the United States Trademark Trial and Appeal Board (Id.).

Plaintiff produced a document in discovery which evidences a Google search for Defendants' products, which search was made in Tampa, Florida two days before Plaintiff purchased any products from Defendants (Id. at 3-4).   Plaintiff denies being in Tampa on the day the search was conducted (Doc. 46-1 at 9).   DSN hopes to prove that the search was made by Plaintiff's attorneys from their office in Tampa.   If DSN is correct, it argues that this evidence will support its theory that Plaintiff's attorneys manufactured standing by instructing Plaintiff to buy Defendants' products (Doc. 60 at 3).   DSN also argues that

---

[3] PBB claims ownership of the trademark "Tren 75," which it licenses to DSN (Doc. 60 at 2).

the evidence would contradict Plaintiff's testimony that he first heard about Defendants and their products through discussions in his office in Orlando and only decided to try the products after reviewing Defendants' advertising (Id. at 4).

According to DSN, these "unusual circumstances" are why it is attempting to discover the identity of the internet subscriber associated with IP address 71.43.72.10 (Id.).   Plaintiff used a computer connected to this address when he made one of his purchases of DSN's products (Id.).   Bright House Networks, LLC ("BHN"), is the apparent owner of IP address 71.43.72.10 (Id. at 5).   In order to learn the identity of the IP address subscriber, and other information about the subscriber, DSN served a subpoena for deposition by written questions on BHN (Doc. 60-1).   BHN responded that it is prohibited from disclosing the information under the Cable Privacy Act, 47 U.S.C. § 551, without a judicially approved court order (Doc. 60 at 5).   DSN's motion seeks an order requiring BHN to release the subscriber information "and provide answers to DSN's deposition by written questions without provision for prior notice to the subscriber in order to avoid delay in complying with the subpoena."   (Id.).

Plaintiff has already testified at deposition that IP address 71.43.72.10 belongs to Infinite Labs located in Orlando, Florida (Doc. 65 at 1-2; Doc. 65-1).   He has also produced a document which he says shows "the date, time and location of Plaintiff's purchase of Defendants' products."[4]   (Doc. 65 at 1-2; Doc. 65-2).   Plaintiff argues that because DSN already knows this information, the pending motion is nothing more than an attempt to harass Plaintiff, distract the Court, shift the focus of the case, and cast Plaintiff and his attorneys in a false light (Doc. 65 at 5).   Plaintiff also argues that because DSN

---

[4] The document shows the "Billing Details" and "Shipping Details" for orders placed on April 24, 2015 and June 19, 2015 (Doc. 65-1).

already knows the identity of the subscriber, the information it purports to seek is not relevant (Id.).

There does not appear to be any shortage of animosity in this case.   DSN and its attorneys allege that Plaintiff and his counsel are bringing this lawsuit for multiple improper purposes.   Plaintiff and his attorneys accuse DSN and its counsel of prosecuting this motion for equally improper purposes.   At this point, none of these accusations have been proven and the parties are within their rights to engage in permissible discovery.   Just because Plaintiff has already testified to the identity of the IP subscriber does not mean DSN cannot take additional discovery that may confirm or contradict his testimony.   And, Plaintiff's testimony does not make the information irrelevant.   If the subscriber information possessed by BHN contradicts Plaintiff's testimony, DSN may use it to attack his credibility and qualifications to serve as class representative.

One of the prerequisites for the certification of a class action is that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4).   "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." Amchem Prods. Inc. v. Windsor, 521 U.S. 591, 625 (1997).   "A class representative must be part of the class and possess the same interest and suffer the same injury as the class members."   Id. (internal quotations omitted).   The adequacy of representation analysis involves two inquiries: "(1) whether any substantial conflicts of interest exist between the representatives and the class, and (2) whether the representatives will adequately prosecute the action."   Valley Drug Co. v. Geneva Pharms., Inc., 350 F.3d 1181, 1189 (11th Cir. 2003).   Plaintiff has testified that he purchased Defendants' products after

performing a Google search and viewing Defendants' advertisements.    If DSN discovers evidence that contradicts this testimony, it may be relevant to the suitability of Plaintiff and his counsel and whether they will adequately represent the putative classes.

For these reasons, the Court finds that DSN is entitled to discover the information sought in its subpoena for written deposition propounded to BHN.    Accordingly, BHN is directed to disclose personally identifiable information, as defined by the Cable Act, in response to Defendant's April 13, 2016 subpoena for deposition by written questions. See 47 U.S.C. § 551(c)(2)(B) (permitting a cable operator to disclose personally identifiable information concerning a subscriber when made pursuant to a court order authorizing such disclosure, if the subscriber is notified of such order by the cable operator).

DSN argues that BHN should be required to immediately respond to the subpoena without providing prior notice to the subscriber to whom IP address 71.43.72.10 is assigned[5] (Doc. 60 at 6-7).    But, DSN has not cited any authority suggesting that a cable operator authorized by court order to disclose personally identifiable information can make the disclosure before "the subscriber is notified of such order by the person to whom the order is directed."    47 U.S.C. §§ 551(c)(2)(B), (f).    DSN has also failed to explain why it would be prejudiced by BHN's provision of notice and any resulting delay in its response to the subpoena.    Therefore, BHN will be required to give the statutory notice before complying with the subpoena.

Now, it is **ORDERED** that:

---

[5] Notice may not be a significant issue if IP address 71.43.72.10 is assigned to Plaintiff's employer, Infinite Labs, or if the address is associated with Plaintiff's attorneys.    Under either scenario, the Court expects the subscriber will have prompt notice of this Order.

(1) DSN shall serve a copy of Order on BHN.

(2) BHN shall have five business days from the date that this Order is served on it to notify the subscriber of IP address 71.43.72.10 of the subpoena and this Order. Notice may be by any reasonable means including written notice sent to the subscriber's last known address, transmitted by first-class mail or via overnight service, or by electronic mail service.

(3) The subscriber shall have 21 days from the date of service to file any motions in this Court contesting the subpoena (including a motion to quash or modify the subpoena).   If the 21 day period lapses without the subscriber contesting the subpoena, then BHN shall have 10 days to answer DSN's written deposition questions.

(4) The parties may only use the subpoenaed information to litigate the claims and defenses in this lawsuit, and for no other purpose.

**DONE** and **ORDERED** in Orlando, Florida on May 24, 2016.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to Counsel of Record